# STATE OF MICHIGAN

# COURT OF APPEALS

DEAN McMASTER,

        Plaintiff-Appellant,

v

DTE ENERGY COMPANY,

        Defendant,

and

DTE ELECTRIC COMPANY,

        Defendant-Appellee,

and

FERROUS PROCESSING AND TRADING COMPANY d/b/a FERROUS PROCESSING & TRADING CO,

        Defendant.

UNPUBLISHED
November 8, 2018

No. 339271
Oakland Circuit Court
LC No. 15-147414-NO

Before: JANSEN, P.J., and METER and STEPHENS, JJ.

PER CURIAM.

Plaintiff Dean McMaster appeals as of right an order entered on January 10, 2017 granting summary disposition in favor of defendant DTE Electric Company ("DTE"). We affirm.

## I. BACKGROUND

DTE contracted with Ferrous Processing & Trading Company ("Ferrous") to have containers of scrap picked up from DTE facilities and taken to Ferrous' salvage yard. Ferrous subcontracted with P&T Leasing Company ("P&T") to pick up the scrap containers and deliver them to Ferrous. Plaintiff was employed by P&T as a driver. This case arises out of injuries sustained by plaintiff when a large steel pipe rolled out of a container and struck him in the leg resulting in the amputation of his leg.

-1-

On the morning of October 14, 2015 plaintiff arrived at DTE's Belle River Power Plant to pick up a container of demolition scrap and deliver it to Ferrous' salvage yard. Plaintiff inspected the container prior to hauling it away and observed a large industrial blue steel pipe inside the container. The pipe was parallel to and up against the back door of the container. Plaintiff could have requested that a DTE crane operator relocate or remove the pipe from the container but did not do so. Plaintiff used his truck's hydraulics to lift the container onto his trailer, secured the container to his truck and departed the Belle River Power Plant for the Ferrous facility in Pontiac. Upon plaintiff's arrival at the Ferrous salvage yard, he took the truck to be weighed, then drove to the inspection area to meet with the Ferrous road inspector. The inspector told plaintiff where to take the container and plaintiff drove to the specified dumping location. Once he arrived at the specified location, he got out of the truck and walked backed to where the container was secured to his flat-bed trailer. Plaintiff kept the truck engine running because it also controlled the hydraulic system that was necessary to lift the container up to the 35-40 degree angle needed to dump the container. He cracked the container door partially open to see if any materials would fall out. When nothing fell out, he felt it was safe to continue and proceeded to open the door all of the way so that the materials could be dumped out. However, before plaintiff was able to dump out the contents of the container, the Ferrous road inspector had second thoughts about where this particular load should be dumped and he and another Ferrous employee decided that it should be taken to another area in the facility. Plaintiff and the two Ferrous employees talked for about 5-10 minutes about where the container should be dumped while standing behind the wide open door of the container with the truck's engine running. Once the decision had been made as to where to take the container, plaintiff proceeded to return to his truck in order to shut off the hydraulics so that he could take the container to another area as instructed. As plaintiff walked to the driver side of the truck, the blue pipe rolled out of the container and struck plaintiff in the leg resulting in the amputation of his leg.

Plaintiff filed suit against defendants DTE and Ferrous alleging negligence against both. Both defendants answered, denying liability and moving for summary disposition under MCR 2.116(C)(10) asserting that they did not owe plaintiff any duty of care and that plaintiff was not able to meet his burden of proof as to causation. The trial court held a hearing on both motions for summary disposition on January 4, 2017 and while it denied the motion brought by Ferrous, it granted DTE's motion concluding that there was neither evidence of a breach of duty nor proximate causation. Ferrous and the plaintiff subsequently entered into a stipulated order of dismissal on June 28, 2017. The instant appeal against defendant DTE followed.

## II. DEFENDANT'S JURISDICTIONAL CHALLENGE

We first turn to defendant's challenge to this Court's jurisdiction over the instant appeal. DTE argues that the June 28, 2017 stipulated order of dismissal without prejudice bars any appeal against it. We disagree. A stipulation "is to be read and construed in the light surrounding the circumstances and the whole record," and it is not "so construed as to give effect of waiver of a right not plainly intended to be relinquished." *Whitley v Chrysler Corp,* 373 Mich 469, 474; 130 NW2d 26 (1964). DTE was not a party to the stipulation entered on June 28, 2017 nor is there any indication on the record of a stipulation to relinquish any claims as to plaintiff and defendant DTE. Those claims were addressed in the court's January 10, 2017 order granting DTE summary disposition. More importantly, that grant of summary disposition was not a final order appealable as of right because the claims against Ferrous were still pending. A final order

-2-

is the first order in a civil action that disposes of all of the claims of all of the parties. MCR 7.202(6)(a)(i). Not until entry of the stipulation did plaintiff's right to appeal accrue. We, therefore, conclude this Court has jurisdiction over plaintiff's appeal.[1]

## II. COMMON-LAW DUTY

On appeal, plaintiff argues that DTE owed plaintiff a common law duty to exercise reasonable care when loading the containers so as not to create an unreasonable risk of harm. We agree.

This Court reviews a trial court's order on a motion for summary disposition de novo. *Bennett v Detroit Police Chief*, 274 Mich App 307, 316; 732 NW2d 164 (2006). When reviewing a motion for summary disposition brought pursuant to MCR 2.116 (C)(10), a court must consider "the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "Where the proffered evidence fails to establish a genuine issue regarding any material fact, the moving party is entitled to judgment as a matter of law." *Bennett*, 274 Mich App at 317.

It is well established that a prima facie case of negligence requires a plaintiff to prove four elements: duty, breach of that duty, causation, and damages. *Kosmalski v St. John's Lutheran Church*, 261 Mich App 56, 60; 680 NW2d 50 (2004). Even where there is a contract a tort duty to use due care toward non-parties has been recognized. see *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967). In *Clark*, the duty "imposed by law" was "[t]he general duty of a contractor to act so as not to unreasonably endanger the well-being of employees of either subcontractors or inspectors, or anyone else lawfully on the site of the project. *Id* at 261-262. Plaintiff, as an employee of a sub-contractor was owed that duty of care.

Next, plaintiff argues that the trial court erred when it ruled that DTE did not breach the duty of reasonable care owed to plaintiff and that it, also erred in concluding that plaintiff's proofs on causation failed. We disagree.

We first reject plaintiff's argument that a MIOSHA violation occurred and that therefore there is evidence of a breach of duty. The MIOSHA citations in this case were against Ferrous and P&T, not DTE. The testimony offered by the MIOSHA inspector noted that the hazard causing the Ferrous and P&T citations was not the loading of the container but the lack of training and procedures surrounding the unloading and opening of the container door. Plaintiff offers the testimony of his expert, Larry Baareman to support his assertion of breach of duty. Contrary to defendant's argument we must consider the deposition testimony of Baaremen offered to the trial court which was attached to the plaintiff's response to the motion for summary disposition, because the expert was not stricken when the motion was considered.

---

[1] This Court "has jurisdiction of an appeal of right filed by an aggrieved party from . . . [a] final judgment or final order of the Circuit Court, or Court of Claims, as defined in MCR 7.202(6)." MCR 7.203(A)(1).

Baareman testified at length about the likelihood that the placement of the pipe parallel to the container door was unwise. He acknowledged that there was no statute or regulation on loading but asserted that industry best practices were not followed in this instance regarding how a load should be positioned. The plaintiff admits he observed the pipe and its location before he left DTE's property and again minutes before it fell from the container while he was at the Ferrous facility. Plaintiff also acknowledges that he had the opportunity to select how the container was to be off-loaded. Thus, he acknowledges the open and obvious nature of the pipe's placement and negates the exception of effectively unavoidable. Plaintiff offers no evidence of any other special aspect removing this case from the application of the doctrine that there is no duty to warn or protect from a known danger. *Groncki v Detroit Edison Co*, 453 Mich 644, 656; 557 NW2d 289 (1996).

We are aware that DTE argues that they owed no duty to this plaintiff because of MCL 480.11a, under which Michigan adopted the federal Motor Carrier Safety regulations as provided by 49 CFR 392.9. *DOT v Initial Transport, Inc*, 276 Mich App 318, 323; 740 NW2d 720 (2007), rev'd in part on other grounds 481 Mich 862 (2008). DTE has offered several unpublished cases in support of its position that the *Savage*[2] doctrine should be followed. Because this case is decided under the open and obvious doctrine we decline to address *Savage*.

Affirmed.

/s/ Kathleen Jansen
/s/ Patrick M. Meter
/s/ Cynthia Diane Stephens

---

[2] *United States v Savage Truck Line, Inc*, 209 F2d 442, 445 (CA 4, 1953).